2022 IL App (2d) 200449-U
No. 2-20-0449
Order filed August 15, 2022

NOTICE: This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Respondent-Appellee, | ) ) | |
| v. | ) ) | No. 03 CF 1350 |
| SHAWN A. BARMORE, JR., | ) ) | Honorable Randy Wilt, |
| Petitioner-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Justices McLaren and Brennan concurred in the judgment.

ORDER

¶ 1    *Held*:  The trial court erred in dismissing petitioner's postconviction petition after second-stage proceedings where postconviction counsel failed to properly amend petitioner's *pro se* petition regarding claims that his statement was coerced and that petitioner suffered a speedy-trial violation; postconviction counsel was not ineffective for including a claim that was barred by *res judicata* or for failing to include an emerging-adult claim that was not included in petitioner's *pro se* petition; and trial court did not err in denying, after third-stage proceedings, petitioner's claim that trial counsel was ineffective for failing to properly advise him of sentencing ranges he did or could have faced as it affected his decision regarding whether to accept a plea offered by the State.

¶ 2    Petitioner, Shawn A. Barmore, Jr., was convicted of first-degree murder and sentenced to 45 years' imprisonment.  These charges arose out of the shooting death of Pedro Marin.  His

conviction was affirmed on direct appeal. Petitioner filed a petition pursuant to the Postconviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)), which was summarily dismissed. This court reversed and remanded for further proceedings. Appointed counsel then filed an amended postconviction petition. Several claims were dismissed during second-stage proceedings, and those that survived to the third stage were subsequently denied. Petitioner now appeals, and, for the reasons that follow, we affirm in part, reverse in part, and remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4      The underlying facts of this case were set forth in great detail in our original disposition in this matter. See *People v. Barmore,* 379 Ill. App. 3d 1080 (2008) (table) (unpublished order under Illinois Supreme Court Rule 23). We will not repeat them here; rather, we will discuss those facts necessary to the resolution of the arguments advanced by petitioner as we encounter them. We will however, set forth the pertinent events surrounding the instant postconviction petition.

¶ 5      Petitioner filed a *pro se* postconviction petition. In it, petitioner alleged 29 constitutional errors. Pertinent here, petitioner alleged that trial counsel was ineffective for failing to move to suppress his statement. Petitioner alleged that, when he was interrogated in Denver after he was apprehended, the interrogating detectives: (1) ignored his request for an attorney; (2) "slapped him a few times"; and (3) told him that he would get the maximum sentence if he did not answer their questions (or that he would receive lenient treatment if he cooperated). In support of these claims, petitioner attached an unfiled motion to suppress his statement drafted by his trial attorney (Shelton Green who was later replaced as trial counsel by Greg Clark). He also attached an affidavit from his mother averring that she would testify that: petitioner wanted her to pass information to his attorney, Greg Clark, concerning several motions his previous attorney had drafted; she contacted Clark; Clark stated he did not plan to file any motions on behalf of petitioner and he would speak

with petitioner when he had time; petitioner told her that when he was interrogated, police officers slapped him two or three times and threatened him with a maximum sentence; and the interrogating officers did not allow petitioner to speak with an attorney despite his request to do so. Petitioner also attached his own affidavit, in which he averred: when he was interrogated, the police hit him and "threatened to charge [him] with murder and give [him] the most time possible if [he] didn't' make a statement and sign it"; the police continued to question him after he asked for an attorney; he gave Attorney Clark a copy of the motion to suppress drafted by Attorney Green and stated he wanted Clark to file it but Clark refused; and he asked his mother to contact Clark on his behalf and she did so.

¶ 6    Petitioner also averred that he instructed Clark to strike a juror who was married to a State's Attorney and Clark refused and that petitioner wrote to appellate counsel directing him to raise the issue of Clark's effectiveness on direct appeal, but appellate counsel refused.

¶ 7    The trial court dismissed the petition during the first-stage of postconviction proceedings. This court reversed and remanded, so the petition advanced to the second stage. While this appeal was pending, petitioner filed a petition in accordance with section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)), asserting that the superseding indictment that added the gun enhancement was void on speedy trial and compulsory joinder grounds. On remand, postconviction counsel was appointed to assist petitioner.

¶ 8    Postconviction counsel amended petitioner's petition, setting forth seven grounds for relief and an accompanying Rule 651(c) certificate (Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013)). The State moved to dismiss. The first ground asserted was that the State offered a 20-year plea deal and trial counsel (Green at the time) failed to inform petitioner that though he was facing 20 to 60 years' imprisonment as originally indicted, the State could add a firearm enhancement of 25 years if

petitioner did not accept the deal. These allegations were supported by an affidavit from petitioner averring he would have accepted the State's alleged offer of 20 years' imprisonment if he knew of the possibility of a 25-year enhancement. This claim progressed to third-stage proceedings.

¶ 9 Second, the petition alleged ineffective assistance of trial counsel for failing to move to suppress petitioner's statement given in Denver. The petition alleged that petitioner "advised that he was physically abused by the police and numerous times asked for an attorney to be present." The police ignored his requests for counsel. Green drafted a motion to suppress but did not file it. Clark and petitioner discussed the motion, and petitioner urged Clark to file it. Clark did not file the motion. At trial, Detective Mastrioanni testified that petitioner willingly spoke with the police. Petitioner's statement was inconsistent with his trial testimony. Thus, the statement adversely affected his credibility. Postconviction counsel alleged that if the motion had been granted, it would have strengthened petitioner's case, but "it [could] not be known whether the motion would [have been] granted or not." Petitioner's supporting affidavit stated that he had discussed this issue with Green and raised the issue with Clark. It further stated that his statement was coerced but did not give details of how petitioner was "physically abused." During argument, petitioner's counsel stated that he "agreed with [the State]" that they could not know what would have happened had the motion been filed. Petitioner's counsel also stated that the question of whether the motion would have been granted "require[d] a bit of speculation." The trial court dismissed this claim, noting that petitioner conceded that "he has no idea if the motion to suppress statements would have been granted." The trial court also found that Clark's decision not to file the motion was trial strategy, as portions of the statement were consistent with petitioner's trial testimony.

¶ 10    The third ground asserted in the petition was ineffective assistance of trial counsel based on trial counsel's failure to move for testing of a note allegedly written by petitioner upon which a latent fingerprint was discovered on the note.  This count is not at issue in this appeal.

¶ 11    Fourth, the petition alleged that appellate counsel was ineffective for not addressing trial counsel's failure to argue and seek a jury instruction that petitioner's conviction should be mitigated to second-degree murder based on the existence of a serious provocation.  The trial court found that this issue was *res judicata*.  Postconviction counsel raised the possibility that additional evidence might have been discovered had trial counsel pursued the issue, but could not identify any.

¶ 12    The fifth basis for relief asserted a *Brady* violation.  It is not at issue in this appeal.

¶ 13    The sixth issue is also not argued in this appeal.  Here, petitioner notes that a juror was married to a former State's Attorney and knew people that worked in law enforcement.  During *voir dire*, the juror stated that "he was uncertain and/or unable to be impartial due to the nature of his wife's work and the people he knew in law enforcement."  Despite petitioner's urging, Clark declined to use a peremptory challenge, and the trial court did not strike the juror for cause (which petitioner also asserts was error).  Postconviction counsel conceded that this issue "requires some degree of speculation."  The trial court dismissed this claim, finding that it was not supported by the record as the juror stated he could be fair and impartial.

¶ 14    The seventh claimed ground for relief in the amended petition was ineffective assistance of appellate counsel for failing to raise the previous six issues (with the exception of the fourth) on direct appeal.  Based on its resolution of the previous claims and to the extent that some of petitioner's arguments concerned matters *dehors* record, the trial court dismissed this claim.

¶ 15    We now turn to the substance of petitioner's appeal.

¶ 16                                      II. ANALYSIS

¶ 17    Petitioner raises two main issues.  First, he contends that postconviction counsel was ineffective during second-stage proceedings in that: (1) postconviction counsel failed to adequately present a claim that trial counsel was ineffective for not moving to suppress petitioner's statement to the police, (2) postconviction counsel raised a frivolous claim that was barred by *res judicata*, (3) postconviction counsel failed to raise a meritorious emerging-adult claim that was apparent on the face of the record, and (4) postconviction counsel failed to raise a meritorious speedy-trial and compulsory-joinder claim.  Second, petitioner contends that the trial court erred in denying his claim that trial court was ineffective following third-stage proceedings in that trial counsel failed to inform him of the potential for an enhanced sentence causing him to reject a plea offer by the State.

¶ 18    The claims petitioner raises were resolved during both second- and third-stage postconviction proceedings.  Generally, in accordance with the Act, a petitioner may challenge his or her conviction by alleging a constitutional violation.  *People v. Domagala*, 2013 IL 113688, ¶ 32.  The Act contemplates three stages of review.  Here, the case progressed beyond the first stage, where the trial court may dismiss petitions that are frivolous or patently lack merit.  *Id*.  In both the second stage and the third stage, the petitioner bears the burden of "making a substantial showing of a constitutional violation."  *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006) (citing *People v. Coleman*, 206 Ill. 2d 261, 277 (2002)).

¶ 19    During the second stage, counsel may be appointed to assist the petitioner.  "All well-pleaded facts that are not positively rebutted by the trial record are to be taken as true, and, in the event the circuit court dismisses the petition at that stage, we generally review the circuit court's decision using a *de novo* standard."  *Pendleton*, 223 Ill. 2d at 473.

¶ 20    Claims that survive to the third stage are resolved in an evidentiary hearing. *Id*. If fact-finding or credibility determinations are necessary to resolve the petition, we will not disturb the trial court's judgment unless it is manifestly erroneous. *Id*. Where no such determinations are involved, we will apply the *de novo* standard "unless the judge presiding over postconviction proceedings has some 'special expertise or familiarity' with the trial or sentencing of the [petitioner] and that 'familiarity' has some bearing upon disposition of the postconviction petition." *Id*. With these standards in mind, we now turn to the issues raised by petitioner.

¶ 21                                    A. SECOND-STAGE PROCEEDINGS

¶ 22    We first address petitioner's arguments concerning the representation he received from counsel during second-stage proceedings. Specifically, petitioner alleges postconviction counsel was ineffective for (1) failing to properly raise a claim that trial counsel was ineffective for not moving to suppress petitioner's statement to the police, (2) raising a claim that was barred by *res judicata*, (3) failing to raise an emerging-adult claim, and (4) failing to raise a meritorious speedy-trial and compulsory-joinder claim.

¶ 23    During postconviction proceedings, a petitioner is entitled to a "reasonable level of assistance." *People v. Turner*, 187 Ill. 2d 406, 410 (1999). Illinois Supreme Court Rule 651(c) sets forth the specific duties counsel must perform during second-stage proceedings. *Id*. This rule does not apply to third-stage proceedings, where the standard governing counsel's conduct is one of general reasonableness. *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 29. To ensure petitioners receive a reasonable level of assistance, Rule 651(c) imposes certain duties upon counsel. *People v. Schlosser*, 2012 IL App (1st) 092523, ¶ 18. It requires that counsel consult with the petitioner (in person or by mail), examine the record, and amend the petitioner's *pro se* petition to adequately present the petitioner's claims. *People v. Marshall*, 375 Ill. App. 3d 670,

680 (2007); Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). This rule further requires counsel to file an affidavit certifying that he or she fulfilled those duties. *Schlosser*, 2012 IL App (1st) 092523, ¶ 18. The filing of an affidavit by counsel certifying compliance with Rule 651(c) creates a rebuttable presumption that counsel provided reasonable assistance to the petitioner. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. It is a petitioner's burden to overcome this presumption. *Id*. Further, failing to overcome this presumption forecloses further review of the reasonableness of postconviction counsel's conduct. *People v. Mendoza*, 402 Ill. App. 3d 808, 813 (2010) (citing *People v. Rossi*, 387 Ill. App. 3d 1054, 1060 (2009)).

¶ 24　　Moreover, the failure of counsel to comply with Rule 651(c) is not amendable to a harmless error analysis. *People v. Suarez*, 224 Ill. 2d 37, 51-52 (2007). Our supreme court has stated, "This court has consistently held that remand is required where postconviction counsel failed to fulfill the duties of consultation, examining the record, and amendment of the *pro se* petition, regardless of whether the claims raised in the petition had merit." *Id*. at 47. It added that "it is error to dismiss a postconviction petition on the pleadings where there has been inadequate representation by counsel." *Id*. It explained, "Our Rule 651(c) analysis has been driven, not by whether a particular defendant's claim is potentially meritorious, but by the conviction that where postconviction counsel does not adequately complete the duties mandated by the rule, the limited right to counsel conferred by the Act cannot be fully realized." *Id*. at 51. Whether the underlying issue is meritorious is beside the point. *Id*. A court should "not speculate whether the trial court would have dismissed the petition without an evidentiary hearing if counsel had adequately performed his duties under Rule 651(c)." *People v. Turner*, 187 Ill. 2d 406, 416 (1999). Where counsel fails to comply with Rule 651(c), a petitioner need not show that the omission caused him or her

prejudice. *People v. Nitz*, 2011 IL App (2d) 100031, ¶ 18 (citing *People v. Perkins*, 367 Ill. App. 3d 895, 905 (2006)).

¶ 25     To proceed past the second stage, a petitioner must make a substantial showing that his or her constitutional rights were violated. *Coleman*, 183 Ill. 2d 366, 381 (1998). The petition must be supported by affidavits, records, and other evidence as necessary to substantiate its allegations. *People v. Wideman*, 2013 IL App (1st) 102273, ¶ 15. While well-pleaded facts are taken as true at this stage (*Pendleton*, 223 Ill. 2d at 473), conclusory allegations are insufficient to entitle a petition to progress to the third stage (*People v. Graham*, 48 Ill. App. 3d 689, 692 (1977)). That is, "Nonfactual and nonspecific assertions which merely amount to conclusions are not sufficient to require a hearing under the Act." *Coleman*, 183 Ill. 2d at 381 (citing *People v. West*, 43 Ill. 2d 219, 223 (1969), and *People v. Smith*, 40 Ill. 2d   562, 564 (1968)). Where a claim is based upon evidence outside the record, it should not generally be resolved on the pleadings. *Coleman*, 183 Ill. 2d at 382 (citing *People v. Airmers*, 34 Ill. 2d 222, 226 (1969)).

¶ 26     We now turn to the particular issues set forth by petitioner where he alleges he received ineffective assistance of postconviction counsel.

¶ 27                         1. The Motion to Suppress

¶ 28     Petitioner first contends that postconviction counsel rendered unreasonable assistance in that "he failed to familiarize himself with the basis for suppressing [petitioner's] custodial statement, which was not adequately presented in the amended petition." As noted, a petitioner is entitled to the reasonable assistance of counsel in postconviction proceedings and counsel's conduct is governed by Rule 651(c). *Turner*, 187 Ill. 2d at 410.

¶ 29     At issue here are statements petitioner made to the police after he was apprehended in Colorado. Detective Scott Mastroianni, one of the police officers that interviewed petitioner,

testified concerning petitioner's statement. Detective Jimenez was also present. He stated that Rockford police officers traveled to Colorado and interrogated petitioner. Petitioner initially denied killing the victim (Marin) in this case. Petitioner stated that a man named "Twig," whose real name was Eddie Torrance, shot the victim. Mastroianni testified that petitioner gave "a fairly detailed version whereby Twig was the individual that shot Pedro Marin." Mastroianni told petitioner that they had witness statements identifying him as the shooter. They also had a picture of petitioner's brother holding the gun they believed was the murder weapon, which was taken at petitioner's house. Mastroianni also told petitioner that they had listened to petitioner's father's phone conversations where he discussed petitioner's involvement in the murder. Mastroianni also noted that petitioner had been on the run for seven months. Petitioner "put his hands over his ears and kind of hung his head low and shaking his head back and forth and told us he was scared." Petitioner then stated that he would give the police an oral account of what happened. Petitioner told the officers that he had worked hard to steal a car, and he was upset because the victim had stolen the car from him. He also stated that he had given the murder weapon to a person, but he refused to identify the person. He stated the person had destroyed the gun, but he did not say how. He never stated that the gun had been discharged during a struggle or that the victim had pushed him with his left arm.

¶ 30    After he gave the oral account, petitioner gave a written statement. In that statement, petitioner related that in May 2003, he stole a Chevrolet Caprice at a gas station. He intended to use it for parts for another car that he owned. He parked the car in an abandoned garage. The next day, he spoke to "Twig," who he knew "from the neighborhood." He believed Twig would be able to "part out" the car. Later that day, Twig came to petitioner's house to get the keys. Twig was with "a Mexican dude" that petitioner did not know (Marin). They were driving a blue pickup

truck. They said they would part out the car for an eight-ball of crack cocaine. They appeared drunk. Petitioner gave Twig some crack, but it was less than an eight ball. He gave Twig the keys. Marin said he was going to help Twig part out the car. Twig and Marin left, but they returned in 15 minutes and told petitioner that the car was not in the garage.

¶ 31    Petitioner told Twig he did not believe him. He and Twig drove to the garage. The car was gone. Marin was no longer present, and petitioner asked Twig where he was. Twig stated that he did not know. They drove around looking for him, and then drove to Twig's house. On the way there, they saw Marin. Petitioner got out of the truck and spoke with him. Petitioner stated, "The Mexican dude started acting all pumped up like [petitioner] did not have a right to question him." They started arguing.

¶ 32    Petitioner acknowledged that he was carrying a Tech 9mm pistol. When he first got out of the truck, he left the gun inside. After the argument began, he returned to the truck and got it. He explained that he did not intend to shoot Marin, but "wanted him to know [petitioner] was not playing." Petitioner told Marin to tell him where the car was. Marin said he did not know. When he saw petitioner's gun, Marin asked, "What are you going to do with that gun?" Marin called petitioner a "pussy." Marin "started talking some crazy Mexican gang shit" and grabbed petitioner's gun. Petitioner told Marin not to touch his gun. Twig said that they did not know where the car was. Marin grabbed the gun again, and petitioner jumped back. Petitioner stated that he shot Marin because he was afraid Marin would take the gun and use it against him. After petitioner fired the gun, Marin ran. Petitioner fired between one and five more times, but he was not aiming at Marin; he was simply trying to cause him to keep running away. Twig left in the blue truck.

¶ 33    Petitioner stated that he did not know whether he had actually shot Marin. Later that night, petitioner ran into Twig. He again asked where the car was, and Twig said he did not know. Petitioner asked where Marin was. Twig said that he had spoken with Marin's wife and he was at home. Twig told petitioner that the police were looking for him, so petitioner went to Chicago. Petitioner stated he was scared and started moving from city to city, eventually ending up in Colorado. He did not mean to kill Marin and wished he could change things so Marin was still alive.

¶ 34    Petitioner points out that when he filed his *pro se* postconviction petition, he alleged that the interrogating detectives ignored his requests for an attorney, they slapped him two or three times, and they threatened him with a severe sentence and promised leniency. These allegations were supported by affidavits from petitioner and his mother. Petitioner also submitted a motion to suppress drafted by his original attorney (Green). In the amended motion submitted by postconviction counsel, counsel did not include the allegations that petitioner had been slapped or that he had been threatened with a severe sentence if he refused to cooperate and promised leniency if he cooperated. It simply stated that petitioner had been physically abused and that petitioner had asked to speak with an attorney. The motion drafted by Green was not attached to the petition. A new affidavit from petitioner was attached in which he stated that he discussed filing a motion to suppress with Green and that he urged Clark to file it. The affidavit does not contain averments about petitioner being slapped during the interrogation.

¶ 35    Petitioner argues, "Thus, the amended petition contained no factual allegations of physical abuse or mental coercion," which, according to petitioner, is "a prerequisite for surviving second-stage review." He cites *People v. Cox*, 136 Ill. App. 3d 623 (1985), in support. *Cox* stands for the proposition that "[m]ere conclusory allegations that constitutional rights have been violated are

insufficient to entitle petitioner to an evidentiary hearing," *Id.* at 628 (quoting *People v. Graham*, 48 Ill. App. 3d 689, 692 (1977)). The *Cox* court explained, "The petition or accompanying affidavits must identify with reasonable certainty the sources, character and availability of the alleged evidence supporting the petitioner's allegations." *Id.* It ultimately held that the "petitioner [in that case] made only vague allegations and conclusions which did not constitute a substantial showing of a constitutional violation." *Id.*

¶ 36 Here, postconviction counsel omitted petitioner's affidavit substantiating that he had been slapped by the police, threatened, and promised leniency. He replaced this with an affidavit simply stating that petitioner's fifth amendment rights had been violated, with no further explanation. The amended petition stated only that petitioner had been "physically threatened and abused by the police." We find sound guidance for resolving this issue in *People v. Johnson*, 154 Ill. 2d 227 (1993). In *Johnson*, the petitioner alleged that the testimony of three probation officers would have corroborated his testimony that he was arrested at 1 p.m. rather than much later during the day of his arrest after probable cause developed (the timing of the arrest had relevance to a motion to suppress). The petitioner asserted that postconviction counsel did not fulfill his duties under Rule 651(c) in that counsel failed to obtain affidavits from the parole officers and attach it to the postconviction petition. *Id.* at 242. Postconviction counsel conceded that he failed to investigate this claim. *Id.* at 242-43. Our supreme court found that Rule 651(c) had been violated:

> We conclude that post-conviction counsel's statements during arguments on the State's motion to dismiss, together with his concessions in the affidavit submitted to this court, clearly demonstrate that Supreme Court Rule 651(c) was not complied with here. As stated, that rule requires the record on appeal to show that counsel made any amendments to the *pro se* petition which were 'necessary for an adequate presentation of

petitioner's contentions.' [Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984).] Here, counsel simply copied an allegation raised in the *pro se* petition. He concedes that he made no effort to contact the witnesses specifically identified in the *pro se* petition, or to amend the petition with affidavits of such witnesses. In such circumstances, we must conclude that counsel failed to adequately comply with Supreme Court Rule 651(c)." *Id.* at 243.

In this case, postconviction counsel's failure was even more egregious. It would have required no investigation for counsel to provide factual support for this claim; affidavits from petitioner and his mother were already in the record. Indeed, counsel actually amended petitioner's *pro se* petition and removed petitioner's specific reference to being slapped by the police during the interrogation in Colorado. Like the *Johnson* court, "we must conclude that counsel failed to adequately comply with Supreme Court Rule 651(c)." *Id.*

¶ 37    In short, postconviction counsel failed to fulfill his duties in accordance with Rule 651(c) with respect to this claim.

¶ 38                                   2. *Res Judicata*

¶ 39    In support of his claim that postconviction counsel rendered ineffective assistance, petitioner next points to the fact that postconviction counsel raised a claim that was barred by *res judicata*. On direct appeal, the sole issue addressed was whether petitioner's conviction should be reduced from first-degree murder to second-degree murder "because the evidence demonstrates that the shooting occurred as a result of serious provocation by Marin." *Barmore*, slip order at 9. This court rejected the claim. Postconviction counsel included in the petition a claim that trial counsel was ineffective for failing to argue and seek an instruction that petitioner was guilty of only second-degree murder based on the existence of a serious provocation.

¶ 40    As noted, one element a party alleging ineffective assistance must prove is that he or she was prejudiced by the alleged omission. *Tate*, 2012 IL 112214, ¶ 18. We fail to see how counsel's decision to include this claim prejudiced petitioner. Had counsel not raised this claim, the outcome of postconviction proceedings would not have been different. That is, not raising the claim would not have resulted in it advancing to third-stage proceedings.

¶ 41    Nevertheless, petitioner suggests that this deficiency "raises serious questions as to the adequacy of postconviction counsel's representation and ability to present other potentially meritorious claims based on evidence outside the record." As noted, Rule 651(c) requires counsel to certify that he or she has examined the record. *Marshall*, 375 Ill. App. 3d 670, 680 (2007); Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). Given a familiarity with the record, it is unclear why an attorney would raise a precluded claim. Counsel's attempt to explain why this occurred during argument before the trial court demonstrates an unfamiliarity with the record. Counsel argued that had this issue been raised at trial, additional evidence may have been developed of record to support this theory. If such additional evidence existed outside the record, it was counsel's duty to supplement the record with evidence or affidavits to support this claim. *Wideman*, 2013 IL App (1st) 102273, ¶ 15. Absent such supplementation, counsel's concession during argument that no evidence existed in the record to support it calls into question counsel's decision to include it in the amended petition in the first place. "To ensure that defendants receive this level of assistance, Rule 651(c) imposes specific duties on appointed counsel *and requires the record to disclose that counsel has fulfilled those duties*." (Emphasis added.) *People v. Shelton*, 2018 IL App (2d) 160303, ¶ 28. Here, the record suggests otherwise and undermines counsel's averment that he conducted an adequate examination of the record.

¶ 42                                3. Emerging-Adult Claim

¶ 43    Petitioner next argues that postconviction counsel rendered unreasonable assistance because counsel did not amend the postconviction petition to allege an emerging-adult claim. In *Miller v. Alabama*, 567 U.S. 460, 489 (2012), the United States Supreme Court held that it was unconstitutional to impose upon a juvenile offender a sentence of life without the possibility of parole without considering the juvenile's youth. In *People v. Buffer*, 2019 IL 122327, ¶ 40, our supreme court held that a sentence of over 40 years' imprisonment constitute a *de facto* life sentence for a juvenile. In *People v. House*, 2021 IL 125124, a defendant who was 19 at the time of the offense at issue was sentenced to a term on natural life. Our supreme court rejected a facial challenge to the sentence. *Id*, ¶ 31. However, it determined that it could not address an as-applied challenge without the development of an evidentiary record. *Id.* Specifically, it sought "evolving science on juvenile maturity and brain development [that] applies to his specific facts and circumstances." *Id*. ¶ 29. It follows, then, that petitioner, who was 19 years old at the time of the offense at issue here, could have asserted a similar challenge, had counsel raised it in the amended petition.

¶ 44    The question remains as to whether postconviction counsel's failure to include this claim constituted a failure of his duties under Rule 651(c). The plain language of that rule dictates that counsel make "any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of *petitioner's contentions*." (Emphasis added.) The rule states nothing about raising claims beyond those raised by the petitioner in his or her *pro se* petition. Thus, our supreme court explained, "While postconviction counsel *may* conduct a broader examination of the record [citation] and may raise additional issues if he or she so chooses, there is no obligation to do so." (Emphasis in original.) *People v. Pendleton*, 223 Ill. 2d 458, 476 (2006). Here, the emerging-adult claim petitioner now seeks to advance was not mentioned in his *pro se* petition. Accordingly,

we cannot find that postconviction counsel rendered unreasonable assistance to petitioner by not raising it.

¶ 45 Petitioner argues for a contrary result, citing *People v. Jennings*, 345 Ill. App. 3d 265 (2003). In that case, the court found that postconviction counsel did not render reasonable assistance when he failed to include a disparate sentencing claim in the amended postconviction petition. *Id.* at 274-75. The court explained:

"We are mindful that a defendant is not entitled to the advocacy of postconviction counsel for purposes of 'exploration, investigation[,] and formulation of potential claims.' [Citation.] Although [the] defendant's *pro se* postconviction petition did not explicitly claim that an arbitrary and unreasonable disparity existed between his 60-year sentence and [a co-defendant's] 56-year sentence, the substance of his ineffective assistance claim and the allegations therein clearly showed that [the] defendant wanted to challenge his sentence. Indeed, at the August 2001 hearing on [the] defendant's postconviction petition, [postconviction counsel] acknowledged that the petition effectively raised a challenge to [the] defendant's sentence. Further, this was not a case where [postconviction counsel] would have had to comb through the entire record to discern this claim. Instead, the September 1999 letter from [trial counsel] to [the] defendant's mother, which [postconviction counsel] used to supplement [the] defendant's petition, suggested a disparate sentencing claim by specifically stating that 'while it is true that [the defendant] received the most time, you must remember that all [the] defendants were sentenced by different judges." (The record shows that in January 1999, [the co-defendant], who was by all accounts the primary moving force behind [the] murder, received a 56-year sentence for first degree murder.) [Citation.] Under these particular circumstances, [postconviction

counsel] should have amended [the] defendant's *pro se* petition to allege a disparate sentencing claim." *Id.* at 274-75.

Petitioner attempts to analogize this case to *Jennings*. He first notes that one of the factors the *Jennings* court considered in finding that counsel had an affirmative obligation to raise the disparate sentencing claim was that the defendant in that case had challenged his sentence in his *pro se* petition. Petitioner contends that this case is similar because petitioner "like the defendant in *Jennings*, challenged the length of his sentence." By this petitioner means that he "would have accepted the State's plea offer for a 20-year sentence had he known about the mandatory minimum 45-year sentence for personal discharge of a firearm causing death." This, however, is not a challenge to the sentence imposed; rather, it is a challenge to the voluntariness of petitioner's guilty plea. As such, the disparate sentencing claim in *Jennings* was arguably within the scope of the allegations of the defendant's *pro se* petition; while here, petitioner's emerging-adult claim cannot reasonably be construed to be within the scope of petitioner's challenge to his plea. Thus, *Jennings* is actually distinguishable on this basis. While we agree with petitioner that the emerging-adult claim was readily apparent and would not have required counsel to "comb through the entire record" (*Id.* at 274), we do not believe that this is sufficient to impose on counsel a duty to raise an issue that was outside the scope of petitioner's allegations in his *pro se* petition. See *People v. Perry*, 2017 IL App (4th) 150587, ¶ 26.

¶ 46 Accordingly, we find no basis to find postconviction counsel's representation of petitioner unreasonable on this issue.

¶ 47 4. Speedy Trial and Compulsory Joinder

¶ 48 Petitioner next faults postconviction counsel for not raising a claim that trial "counsel did not move to strike the second indictment on the grounds that it violated [his] right to a speedy trial

or compulsory joinder." Initially, we note that petitioner sufficiently raised this claim in his *pro se* postconviction petition. In it, he alleged that his constitutional rights were violated when the State filed a superseding indictment that included a firearm enhancement. Defendant styled this as an *ex post facto* violation. However, it is well-established that a *pro se* petitioner need not cite legal authority in his or her petition. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). *Pro se* petitions are to be given a liberal construction. *People v. Thomas*, 2014 IL App (2d) 121001, ¶ 48. We deem it sufficient that petitioner raised the issue, albeit citing an incorrect legal theory. See *People v. Hodges*, 234 Ill. 2d 1, 21 (2009) ("Where defendants are acting *pro se,* courts should review their petitions 'with a lenient eye, allowing borderline cases to proceed.' [Citation.] In the case at bar, the issue of whether defendant's *pro se* petition, which focused on self-defense, could be said to have included allegations regarding 'unreasonable belief' second-degree murder—*i.e.,* imperfect self-defense—is at minimum the type of 'borderline' question which, under a liberal construction, should be answered in defendant's favor."). Petitioner further points out that he filed a section 2-1401 petition (735 ILCS 5/2-1401 (West 2010)), asserting that the superseding indictment was void on speedy trial and compulsory joinder grounds. Postconviction counsel's Rule 651(c) affidavit states that he reviewed the record, so he would have been aware of this petition.

¶ 49 Moreover, as previously noted, Rule 651(c) mandates that counsel aver that he or she "has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." The claim at issue here was not included in the amended postconviction petition. Before proceeding further, we re-emphasize that our analysis focuses not on the underlying merits of this claim; rather, we must consider whether the assistance counsel rendered with regard to it complied with Rule 651(c). *Suarez*, 224 Ill. 2d at 47.

¶ 50    If amended, petitioner's allegations could have been the basis of a potentially viable claim. In *People v. Quigley*, 183 Ill. 2d 1 (1998), our supreme court considered the interplay between compulsory joinder (720 ILCS 5/3-3 (West 2002)) and speedy-trial (725 ILCS 5/103-5 (West 2002)) principles. In that case, the State charged the defendant in separate prosecutions with misdemeanor and felony driving under the influence (DUI) offenses based on a single incident. *Id.* at 3. The misdemeanor charges were dismissed on speedy-trial grounds. *Id.* The court noted, "Where new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges." *Id.* at 13 (quoting *People v. Williams*, 94 Ill. App. 3d 241, 248-49 (1981)). It ultimately found that since the two charges had to be brought together, the felony DUI charge, like the misdemeanor charge, was barred on speedy-trial grounds. See also *People v. Van Schoyck*, 232 Ill. 2d 330, 340 (2009) ("We hold, therefore, that defendant's speedy-trial demand filed with respect to the offenses charged by complaint was applicable to the same offense refiled by the State in its information.").

¶ 51    The parties dispute whether the superseding indictment was filed within the period allowed by the speedy-trial statute (725 ILCS 5/103-5 (West 2002)); however, as noted, whether petitioner's claim would succeed on the merits is not relevant at this point (*Suarez*, 224 Ill. 2d at 47). The State attempts to distinguish *Van Schoyck* and *Quigley* by pointing out that in this case, unlike those two, "the charges were continuously pending." Having reviewed both cases, we find nothing in them to suggest that this fact was significant. Indeed, *Quigley* flatly states, "The aggravated DUI charge was essentially a new and additional charge that should have been brought

with the misdemeanor DUI charge and was subject to the same speedy-trial limitation." *Quigley*, 183 Ill. 2d at 16. No mention is made of whether the original charge was subsequently dismissed.

¶ 52    The State also questions whether the addition of the firearms enhancement in the superseding indictment amounted to the addition of a new charge. The State cites no authority in support of this proposition, and *Quigley* teaches otherwise. Initially, in this case, petitioner was charged with four counts of first-degree murder (See 720 ILCS 5/9-1 (West 2002)). None of the counts included a sentencing enhancement based on the use of a firearm. See 730 ILCS 5/5-8-1 (West 2002)). Subsequently, the State filed a superseding indictment that included a sentencing enhancement of 25-years imprisonment for personally discharging a firearm causing death. See 730 ILCS 5/5-8-1(1)(d)(iii) (West 2002)). In *Quigley*, the defendant was originally charged with misdemeanor and felony DUI in separate prosecutions, and the misdemeanor charge was dismissed on speedy-trial grounds. *Quigley*, 183 Ill. 2d at 3. One issue before the court was whether the compulsory joinder rule required that the felony count be joined with the misdemeanor charge (if so, it would also be subject to dismissal on speedy-trial grounds). *Id.* at 7. The court concluded that it did, explaining:

> "Under section 11-501(d)(3) [(625 ILCS 5/11-501(d)(3) (West 1992)], aggravated DUI occurs when an individual commits some form of misdemeanor DUI, in violation of paragraph (a), and other circumstances are present. The legislature added aggravating factors that change the misdemeanor DUI to a Class 4 felony. The essential and underlying criminal act, however, remains the same: driving while under the influence." *Id.* at 10.

The same logic applies here. Petitioner was charged with first-degree murder. He was later charged with first-degree murder with an aggravating circumstance. Regardless of whether this superseding indictment involved a new charge, *Quigley* teaches the compulsory joinder rule

applies (*Id.* at 10), and, in turn, it is subject to the same speedy-trial limitations as the original charge (*Id.* at 15-16).

¶ 53    In sum, without regard to the merits of the underlying charge (an issue upon which we express no opinion), counsel's failure to amend and present this claim was inconsistent with his duties under Rule 651(c)

¶ 54                                5. Rule 651(c)

¶ 55    In light of the foregoing, we conclude that counsel did not fulfill his duties under Rule 651(c).  Postconviction counsel omitted key allegations and supporting affidavits (which were readily available) regarding petitioner's claim that his statement was not voluntary.  Counsel also included a claim that was barred by *res judicata* and explained that the claim might be viable based on additional evidence that might have been developed, while failing to identify any.  This raises questions about the adequacy of counsel's review of the record, which is required by Rule 651(c).  Finally, counsel failed to amend and include a potentially viable claim based on compulsory joinder and speedy-trial principles.  Under such circumstances, we recently explained, "the appropriate remedy is to remand this matter for further second-stage proceedings, at which the circuit court must appoint new counsel who must then comply with Rule 651(c)." *People v. Urzua*, 2021 IL App (2d) 200231, ¶ 90.  We do so here as well.

¶ 56                    B. THRID-STAGE PROCEEDINGS

¶ 57    Petitioner also contends that the trial court's decision that he failed to establish that trial counsel (Green) was ineffective for failing to properly advise him was error.  Specifically, petitioner asserts that counsel should have properly advised him of the sentencing range he was facing and of the possibility that the State could bring a superseding indictment with a higher range.  This issue was resolved during third-stage postconviction proceedings.  Therefore, the

following standards apply. During third-stage proceedings, an evidentiary hearing is held and the trial court acts as the fact-finder. *People v. Brown*, 2020 Il App (1st) 190828, ¶ 43. The burden is on the petitioner to show by a preponderance of the evidence that he or she was denied a constitutional right. *Id*. Assessing the credibility of evidence, assigning weight to evidence, and resolving conflicts in the record are primarily matters for the trial court. *Id*. Accordingly, we review decisions of the trial court that involve fact-finding or credibility assessments for manifest error. *People v. Carter*, 2017 IL App (1st) 151297, ¶ 132. "Manifest error" is error that is "clearly plain, evident, and indisputable." *People v. Taylor*, 237 Ill. 2d 356, 373 (2010). Where no such determinations are involved and only issues of pure law are involved, review is *de novo*. *Carter*, 2017 IL App (1st) 151297, ¶ 132.

¶ 58    Petitioner is currently serving a 45-year sentence for first-degree murder—a minimum sentence considering the 25-year enhancement to which he was subjected for personally discharging a firearm causing death. First-degree murder, with no enhancement, carries a term of 20 to 60 years' imprisonment. As originally filed, petitioner would have been subject to a 15-year enhancement for committing the offense while armed with a gun. See *People v. White*, 2011 IL 109616, ¶ 26. However, the State subsequently filed a superseding indictment, alleging facts that made petitioner eligible for the 25-year enhancement (at the time petitioner was first indicted, the constitutionality of the statute was being appealed; after its validity was affirmed, the State filed the superseding indictment). See 730 ILCS 5/5-8-1(a)(1)(d) (West 2002).

¶ 59    Petitioner testified that he received an offer to plead guilty in exchange for a 20-year sentence. Petitioner's first attorney (Green) testified that he recalled the State making an offer of 25 years' imprisonment and that it was possible that the State offered 20 years' imprisonment as well, though he did not specifically recall it and could not locate any relevant notes. He also stated

that he would not have advised petitioner of the potential sentencing enhancement. Petitioner testified that he rejected the State's offer of 20 years. Petitioner asserts that he would have accepted the State's offer had he been properly advised by trial counsel of the enhancements he faced. He asserts that counsel was ineffective for not advising him of the possibility of the State filing the superseding indictment and invoking the 25-year enhancement.

¶ 60    Petitioner further argues that, irrespective of the superseding indictment, he was improperly advised of the sentence he was facing. Petitioner points out that the trial court stated, in open court, that the sentencing range for the offense petitioner was charged with was 20 years' to 60 years' imprisonment. The State agreed that this was the correct sentencing range. The trial court then reiterated to petitioner that the maximum sentence petitioner faced was 60 years' imprisonment. However, petitioner points out that, as charged, he was subject to a mandatory 15-year sentencing enhancement for using a firearm during the commission of the murder. See 730 ILCS 5/5-8-1(d)(i) (West 2002). In *White*, 2011 IL 109616, ¶ 26, our supreme court held that the 15-year enhancement was mandatory. Thus, at the time he rejected the State's plea offer, petitioner asserts, he was subject to a sentencing range of 35 years' to 75 years' imprisonment and the State could possibly file a superseding indictment invoking the 25-year enhancement. His attorney did not inform him of either of these facts. We also note that the initial allegations included an assertion that petitioner's actions were accompanied by brutal and heinous behavior, which would have made petitioner eligible for a natural-life sentence. See 730 ILCS 5/5-8-1(a)(1)(b) (West 2002).

¶ 61    When a petitioner alleges he received ineffective assistance of counsel, the following familiar standards apply. To succeed on such a claim, a petitioner must show "both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People*

*v. Colon*, 225 Ill. 2d 125, 135 (2007). The first prong requires a showing that counsel's performance was objectively unreasonable in light of prevailing professional norms. *Id.* To satisfy the second prong, a petitioner must establish that there is a reasonable probability that, but-for counsel's errors, the outcome of the proceeding would have been different. *Id.* When the claim concerns counsel's representation pertaining to the rejection of a plea offer, a petitioner "must establish that there is a reasonable probability that, absent his attorney's deficient advice, he would have accepted the plea offer." *People v. Hale*, 2013 IL 113140, ¶ 18. Moreover, "a defendant's self-serving claims are not adequate; there must be independent, objective confirmation that the plea offer was rejected based on counsel's erroneous advice and not on other considerations." *People v. McGee*, 2021 IL App (2d) 190040, ¶ 33.

¶ 62    The trial court found that petitioner satisfied neither prong. Regarding the first prong, the trial court found that trial counsel had rendered adequate representation by informing petitioner of the sentencing range for the offenses as charged and that counsel had no obligation to inform petitioner that the charges could be amended. It noted that the State had represented to trial counsel that it was seeking 20 to 60 years' imprisonment and trial counsel had no reason to expect that the State would re-indict petitioner. It further noted that the constitutionality of the gun enhancement was being challenged at the time the plea offer was made. The trial court held that counsel's performance was reasonable in that counsel informed petitioner of the penalties for the crimes that was actually charged with.

¶ 63    As for the second prong, the trial court found that petitioner had failed to establish prejudice. The trial court first found that there had been no offer made of 20 years' imprisonment. It found petitioner's testimony incredible on this point, stating, "[h]is claim is self-serving and unsupported by evidence." It noted that petitioner never testified that he would have accepted a

25-year offer. Further, it cited trial counsel's testimony that petitioner sought a lesser offense with a lower sentencing range. The trial court, assuming, *arguendo*, that there had been an offer of 20 years, found that petitioner had not established that he would have accepted it. It noted that petitioner rejected trial counsel's urging to accept the 25-year offer, adding that petitioner would not consider pleading guilty to first-degree murder. It observed that second-degree murder and involuntary manslaughter instructions were given at petitioner's request.

¶ 64     We will address the second prong of the inquiry. It is well-established that a petitioner must satisfy both prongs of this test. *People v. Griffin*, 178 Ill. 2d 65, 74 (1997). We may address either prong first, and if we resolve it against the petitioner, we need not address the other prong. *Id*. We conclude that the trial court's finding the petitioner failed to establish that he would have accepted the State's plea offer had he been advised that he was facing a sentence of 35 to 75 years' imprisonment and that the State could file a superseding indictment increasing that range to 45 to 85 years' imprisonment is not manifestly erroneous.

¶ 65     Initially, we note that the trial court's finding that the offer extended by the State was 25 years' imprisonment rather than 20 years' imprisonment was not manifestly erroneous. The only evidence supporting the latter was petitioner's testimony (trial counsel (Green) neither confirmed nor contradicted petitioner's testimony on this point), which the trial court could reasonably reject as self-serving. Moreover, as the trial court noted, petitioner did not testify that he would have accepted a 25-year offer. Petitioner argues that the difference between a 25-year offer and a 20-year offer is "barely relevant, if at all." He points out that he executed an affidavit *after* the third-stage hearing stating the trial court never communicated the 25-year offer to him and he would have accepted it too. However, the only thing supporting this claim is, again, petitioner's self-serving testimony. In a sense, though, petitioner is correct, the difference between the two

purported offers has little relevance. Given that the trial court found that petitioner failed to establish he would accept an offer of 20 years, it follows that an offer of more time served would have also been rejected.

¶ 66    Indeed, the trial court found that the evidence indicated that petitioner sought a conviction for a lesser offense and that he therefore would not accept a plea that involved first-degree murder. This was supported by the fact that instructions for second-degree murder and involuntary manslaughter were given at petitioner's behest. The trial court further stated that petitioner rejected the 25-year offer despite trial counsel's urgings that he accept it. Thus, this finding is supported by the record.

¶ 67    Petitioner contends that the trial court erred in finding him incredible. We pause for a moment to recall the burden of proof. During third-stage proceedings, it is the petitioner's burden to make "a substantial showing of a constitutional violation." *Pendleton*, 223 Ill. 2d at 473. Thus, it is insufficient for petitioner to prevail even if the trial court arguably erred in finding him incredible. Rather, petitioner must establish that he was credible to the extent that it would have been manifestly erroneous for the trial court to reject his testimony. Petitioner has not met this burden. Quite simply, there is evidence of record that petitioner was seeking a conviction for a lesser offense, including the instructions requested and trial counsel's testimony that petitioner rejected the 25-year offer despite counsel's urgings to the contrary. Given this finding has evidentiary support in the record, it is not manifestly erroneous.

¶ 68    Petitioner argues that it could be both true that he wished for a conviction of a lesser offense and that he would have nevertheless accepted the 25-year offer. He continues that as the potential penalties increased, he "may have made a different decision had he known that a guilty verdict, as charged, would subject him to a substantially longer mandatory minimum sentence." While this

may be true, it may not have been the only factor petitioner considered. For example, the *likelihood* of a conviction of a lesser crime could inform the analysis. If petitioner believed it likely that he would be convicted of a lesser offense, perhaps the sentencing range he was facing would not have been a significant factor. The salient point is this: given that petitioner bears the burden of establishing a constitutional violation (*Pendleton*, 223 Ill. 2d at 473), such uncertainty weighs against him. Because of the burden of proof, petitioner's assertion that no one testified that he would not have accepted the 25-year offer had he been aware of the potential of an enhanced sentence is misplaced.

¶ 69 In short, there was evidence that supported the trial court's decision on this issue, and petitioner has not established that it was manifest error to accept that evidence and reject his testimony.

¶ 70                             III. CONCLUSION

¶ 71 In light of the foregoing, we reverse the judgment of the circuit court dismissing petitioner's postconviction petition after second-stage proceedings and remand for further proceedings. On remand, the trial court must appoint new counsel for petitioner. See *People v. Schlosser*, 2017 IL App (1st) 150355, ¶ 36. We affirm the trial court's denial of petitioner's claims following third-stage proceedings.

¶ 72 Affirmed in part and reversed in part; cause remanded with directions.