NOTICE

Decision filed 11/18/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 231029-U

NO. 5-23-1029

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 12-CF-357 |
| | ) | |
| CORTEZ GILLUM, | ) | Honorable |
| | ) | Zina R. Cruse, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HACKETT[*] delivered the judgment of the court.
Justices Cates and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: The defendant was not provided with ineffective assistance of postconviction counsel where his counsel did not (1) amend his petition to avoid alleged waiver and to include claims from the *pro se* petition, and (2) attach the defendant's affidavit when other documentary evidence was included in support of the petition's claims. However, we reverse the trial court's judgment as to the claim that trial counsel provided ineffective assistance by failing to investigate defense witnesses, and we remand for third-stage evidentiary hearing. We otherwise affirm the court's judgment on the remaining postconviction claims of ineffective assistance of trial counsel. Therefore, we affirm in part, reverse in part, and remand for a third-stage evidentiary hearing.

¶ 2    In October 2022, the circuit court of St. Clair County granted the State's motion to dismiss defendant Cortez Gillum's amended postconviction petition during the second stage of

_____

[*]Originally Justice Welch was assigned to the panel. Justice Hackett was later substituted on the panel and has listened to oral arguments and read the briefs.

1

proceedings under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). The defendant appeals this dismissal, arguing that the court erred in granting the State's motion to dismiss on *Strickland* grounds. See *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant also argues that he did not receive a reasonable level of assistance from postconviction counsel where postconviction counsel failed to shape his claims into proper legal form and failed to include viable claims from his *pro se* petition. For the reasons that follow, we affirm in part, reverse in part, and remand for a third-stage evidentiary hearing.

¶ 3                                    I. BACKGROUND

¶ 4      The facts necessary for our disposition of this appeal are as follows. On March 25, 2014, a St. Clair County jury found the defendant guilty of two counts of attempted first degree murder (counts I and II) (720 ILCS 5/8-4(a), (c)(1)(D) (West 2012); 720 ILCS 5/9-1(a)(1) (West 2012)), one count of aggravated battery with a firearm (count III) (*id.* § 12-3.05(e)(2)), and one count of unlawful possession of a weapon by a felon (count IV) (*id.* § 24-1.1(a)).

¶ 5      Previous to that, in September 2002, in the United States District Court for the Central District of Illinois, the defendant pled guilty to one count of felon in possession of a firearm (18 U.S.C. § 922(g)(1) (2000)) and was committed to the custody of the United States Bureau of Prisons for a term of 10 years. After serving most of his sentence, the defendant was transferred to a halfway house in Farmington, Missouri, to serve his remaining nine months.

¶ 6      In January 2012, after being at the halfway house in Farmington for approximately one month, the defendant received his first furlough, left, and never returned. As a result, the United States Marshals Service circulated a "wanted poster" for his arrest. See 28 C.F.R. 570.38(a) (2011) ("An inmate who violates the conditions of a furlough may be considered an escapee *** and may be subject to criminal prosecution and institution disciplinary action.").

2

¶ 7    On the afternoon of March 4, 2012, after being advised that the defendant had recently been seen at the Orr-Weathers housing complex in East St. Louis, uniformed Officers Rudy McIntosh and Michael Baxton of the East St. Louis Police Department commenced patrolling the area in separate marked squad cars. At around 3 p.m., Officer Baxton observed the defendant walking through a parking lot "attempting to conceal his identity with a hood." Officer Baxton then cut off the defendant's path with his squad car and asked the defendant to identify himself. The defendant gave a false name, and Officer Baxton asked the defendant to put his hands on the vehicle. Officer Baxton attempted to grab the defendant and a scuffle ensued. After breaking apart, Officer Baxton pulled his service weapon and then holstered it and reached behind his back for his pepper spray. The defendant brought out a 9-millimeter pistol (9mm) and shot Officer Baxton in the face. Officer Baxton fell to the ground as the defendant shot twice more, missing both times. The defendant fled the scene and removed his black hooded sweatshirt along the way. After the defendant left, Officer Baxton radioed for assistance, and Officer McIntosh quickly arrived and administered first aid.

¶ 8    The bullet that entered Officer Baxton's face travelled through his left cheek and exited out his left ear. Officer Baxton was transported by ambulance from the scene of the shooting to St. Louis University Hospital, where he remained for several days.

¶ 9    Within hours of the shooting, the police were informed that the defendant was at a high-rise apartment building on Waverly Avenue in East St. Louis. A tactical response team was called to the building, and the defendant was arrested and taken into custody.

¶ 10    On the evening of March 5, 2012, after the defendant indicated that he wanted to give a statement, investigators interviewed him at the St. Clair County jail. The interview was video-recorded, and a redacted version was later played at the defendant's trial. At the outset of the

3

interview, the defendant confirmed that he had not sustained any lacerations, bruises, or abrasions other than handcuff scuffs and a rug burn that had resulted from his arrest. The defendant specifically denied having been "slapped upside the head or anything."

¶ 11    The defendant initially claimed to have witnessed Ryan Ivory shoot Officer Baxton following an argument over money. The defendant stated that he did not know Officer Baxton and had never seen him before. The defendant claimed that he never touched the gun that was used to shoot Officer Baxton and that Ivory had left it at the apartment. The defendant adamantly denied having shot Officer Baxton and the defendant repeatedly stated that he was telling the truth. The defendant also admitted that he was aware the Marshals Service had been looking for him, that he was a "wanted fugitive," and that he had been "ducking" the police for weeks.

¶ 12    When the defendant was informed that his encounter with Officer Baxton had been captured by a security camera, the defendant initially indicated that he shot Officer Baxton to protect his family. The defendant then claimed that he shot Officer Baxton in self-defense. The defendant maintained, among other things, that after Officer Baxton almost ran him over with his squad car, Officer Baxton jumped out of the car with a gun in his hand, acting like a lunatic. The defendant stated that Officer Baxton cornered him where no one else was around, repeatedly hit him in the head with the gun, and pointed the gun at his face. The defendant indicated that after pushing Officer Baxton away during an ensuing struggle, he pulled out his 9mm pistol and tried to shoot Officer Baxton in the leg because he believed that Officer Baxton was going to kill him. The defendant further indicated that the first two shots he fired were warning shots intended to scare Officer Baxton. The defendant claimed that he had "just pointed and shot" and did not know how Officer Baxton ended up getting shot in the face. The defendant further claimed that Officer

4

Baxton had his gun out the entire time and that Officer Baxton's gun was pointed at him when the defendant fired.

¶ 13 When describing what had occurred, the defendant never referenced mace, pepper spray, Officer Baxton encouraging him to run, or Officer Baxton putting him in a chokehold. The defendant maintained that he had been compliant. The defendant indicated that he ditched the hooded sweatshirt he was wearing because it was obstructing his vision as he ran. The defendant stated that he purchased his 9mm pistol "off the street" for $25.

¶ 14 When the defendant was confronted with the fact that there were no physical indications that he had been hit in the head with a gun, the defendant suggested that he had deflected the pistol blows with his arms and that his handcuff scuffs were the resulting injuries. When asked why Officer Baxton had not shot him when Officer Baxton saw that he had a gun, the defendant stated that he did not know. When the interviewing investigators suggested that the defendant had "panicked" and had shot Officer Baxton to avoid being sent back to prison, the defendant insisted that he had not escaped from the halfway house in Farmington because his failure to return from furlough was technically an "unauthorized movement." He further insisted that his unauthorized movement would likely not have resulted in any additional prison time.

¶ 15 The defendant maintained that the surveillance video would corroborate his version of events. The defendant also maintained that because he never intended to kill Officer Baxton, his conduct constituted aggravated discharge of a firearm as opposed to attempted first degree murder. The defendant stated that he did not know why he initially attempted to convince the investigators that Ryan Ivory had shot Officer Baxton.

5

¶ 16    While awaiting trial at the St. Clair County jail, the defendant spoke with four potential witnesses and advised them to speak with his attorney. The witnesses contacted the attorney's office but did not receive any further response.

¶ 17    On March 30, 2012, the defendant entered a plea of not guilty. Before trial, the defendant requested and received a psychological evaluation regarding a potential insanity defense and his fitness to stand trial. The evaluation contained information regarding the defendant's education level, prior criminal record, substance use, suicide attempts, and family mental health history. While the evaluation stated that the defendant suffered from mental illness, the evaluation concluded that he was fit to stand trial. When the evaluation was presented at the June 25, 2012, hearing, the defendant waived his right to a hearing on the matter and agreed to proceed to a trial on the charges. The status hearing was held on August 29, 2012, where two issues were brought before the trial court: the defense counsel's request to continue matters to October 17, 2012; and a discussion regarding DNA testing. The defendant was present and indicated he understood the continuance meant his request for a speedy trial would be tolled through October 17. The hearing was then pushed back to October 18, 2012, where the DNA testing issue was resolved and the defendant agreed with his counsel's request for a continuance. On December 5, 2012, trial counsel filed a motion to suppress the defendant's statements given during the defendant's interrogation, alleging the defendant was subjected to "physical and psychological coercion, duress and violence." On October 3, 2013, defense counsel withdrew the motion to suppress.

¶ 18    At some point, the defendant requested new counsel and a hearing was set for January 22, 2014. At the January hearing, the defendant appeared and withdrew his motion for new counsel. Prior to trial, the defendant again requested new counsel, and at a hearing on the matter on March 4, 2014, argued his motion before the court *pro se*. The defendant argued that he felt his counsel

was not adequately representing him because his counsel had not yet completely reviewed documents regarding the defendant's civil case against Officer Baxton and that counsel had not met with him, responded to his letters, or effectively communicated for nearly two years. The trial court denied his motion.

¶ 19    As referenced above, the defendant also filed a federal civil lawsuit in the United States District Court of the Southern District of Illinois against Officer Baxton alleging use of excessive force by a police officer. *Gillum v. Baxton, et al.*, No. 3:2012-CV-00626. The lawsuit had not concluded at the time of the defendant's criminal trial, but discovery was underway and Officer Baxton was deposed on December 11, 2013. In his deposition, Officer Baxton testified that he had not drawn his service weapon prior to the scuffle and had first drawn it after he and the defendant had broken apart.

¶ 20    At trial, the State submitted the surveillance video recording of the incident into evidence. The video had low resolution, a low frame rate, and no sound. As such, both the defendant and Officer Baxton offered differing testimony as to the details of what occurred.

¶ 21    Officer Baxton testified that after intercepting the defendant, he "saw that [the defendant] was the subject that was on the wanted poster." Intending to arrest the defendant, Officer Baxton repeatedly asked the defendant to "put his hands on the vehicle." When the defendant refused and began backing away, Officer Baxton drew his service pistol, pointed it at the defendant, and ordered the defendant to get down on the ground. When the defendant failed to comply, Officer Baxton "went hands-on" and attempted to force the defendant onto the hood of the car. When the defendant physically resisted, Officer Baxton "disengaged," holstered his pistol, and grabbed his pepper spray, which was on his duty belt behind his gun. Officer Baxton advised the defendant that he was going to "mace [the defendant] if he didn't comply." Officer Baxton did not otherwise

7

threaten the defendant "in any way." As Officer Baxton approached the defendant with the pepper spray, the defendant pulled out a 9mm pistol and shot Officer Baxton once in the face at close range. As Officer Baxton fell to the ground, the defendant leaped backwards firing two additional shots, both of which missed. The defendant then fled the scene, ditching his black hooded sweatshirt along a nearby street. Officer Baxton radioed for assistance, and Officer McIntosh quickly arrived and administered first aid.

¶ 22    As the sole witness for the defense, the defendant testified that, after cutting off his path with the squad car, Officer Baxton jumped out "agitated and aggressive." The defendant testified that Officer Baxton ordered him to the hood of the car and pointed a gun in his face. Officer Baxton then hit the defendant in the head with the gun, banged the defendant's head on the hood and side of the car, and put him in a chokehold. The defendant testified that he was compliant and was not resisting or attempting to flee. The defendant claimed that when he asked Officer Baxton to just arrest him and take him to jail, Officer Baxton told the defendant to run and, "No, you ain't going to jail. You're going to die back here today. I'm tired of individuals like you." The defendant further claimed that Officer Baxton "kept beating [him] and telling [him], 'Run so I can shoot you.' " The defendant testified that when he cried out for help to people across the street, Officer Baxton had looked over at them and told them to mind their own business, or he would "put a case on [them]."

¶ 23    The defendant further testified that after he "kind of backed up a little bit," Officer Baxton reached behind his back, and the defendant thought that Officer Baxton was going to shoot him. The defendant testified that Officer Baxton's "exact words" were, "I'm going to blow your *** brains out. I'm going to mace *** you, and I'm going to blow your *** brains out." At that point, the defendant pulled out his 9mm pistol, fired three shots "toward the ground, and ran." The

8

defendant testified that he had not shot Officer Baxton to avoid arrest and had not tried to kill Officer Baxton.

¶ 24    The defendant testified that his head felt tender and sore after the incident, but there was no bleeding. The defendant claimed that he would have turned himself in to a local police department, but he was afraid that something might happen to him if he did. He eventually went to the seventh-floor apartment on Waverly, hoping that he would not be found there. The defendant testified that he "honestly feared" that he was in danger.

¶ 25    The defendant indicated that he was initially untruthful with the interviewing investigators because he knew that Officer Baxton's father had numerous police connections. The defendant believed that had he admitted to shooting Officer Baxton, the defendant would have been harmed out of "retaliation and revenge." The defendant testified that after he was informed that his encounter with Officer Baxton was caught on video, he decided to tell the truth because he knew that there was proof that he had done nothing wrong. He further indicated that he knew that if something happened to him, his family would be able to watch the video and "know the reasons why it happened." The defendant testified that he had been involved in incidents with East St. Louis police officers on prior occasions and that they had beaten him, shot his brother in the leg, and killed one of his friends.

¶ 26    During closing arguments, the State maintained, among other things, that there was "no doubt" that the defendant had intentionally shot Officer Baxton in the face intending to kill Officer Baxton and had done so to avoid being arrested and sent back to prison. The State argued that the defendant had "zero" credibility and that the defendant's claims that he was the victim defied logic, common sense, and the surveillance video.

¶ 27     In response, defense counsel referenced the infamous "Rodney King case" and argued that the defendant had truthfully described exactly what had occurred. Counsel further argued that because the security video had no audio, it failed to convey "the entire context" of the encounter. Counsel suggested, among other things, that if the incident had been audio-recorded, the jurors would have been able to hear Baxton profanely threaten to kill the defendant while encouraging him to run.

¶ 28     After deliberating for approximately 90 minutes, the jury returned a verdict finding the defendant guilty on all counts. The jury also returned a special interrogatory finding that the defendant had personally discharged a firearm that proximately caused great bodily harm to another. The defendant's sentence on count I was thus subject to a mandatory add-on sentence of 25 years to life. See 725 ILCS 5/111-3(c-5) (West 2012); 720 ILCS 5/8-4(c)(1)(D) (West 2012).

¶ 29     In May 2014, after merging the offense of attempted first degree murder with the second offense of attempted first degree murder and the offense of aggravated battery with a firearm, the trial court imposed an aggregate 70-year sentence on count I and a concurrent 14-year sentence on count IV. In September 2014, following the trial court's denial of the defendant's *pro se* motions for a new trial, which included claims of ineffective assistance of trial counsel for failure to impeach Officer Baxton with evidence of prior bad acts, and a motion to reduce sentence, the defendant filed a timely notice of appeal. On May 8, 2017, this court affirmed the defendant's convictions and sentences. *People v. Gillum*, 2017 IL App (5th) 140450-U. In addition, this court also affirmed the trial court's orders on the defendant's *pro se* posttrial filings.

¶ 30     The defendant then filed a *pro se* postconviction petition under the Act on December 26, 2018. The *pro se* petition alleged that trial counsel was ineffective for the following reasons: (1) failing to impeach Officer Baxton with multiple pieces of evidence, including prior inconsistent

statements at a civil deposition regarding the shooting; (2) failing to present evidence of Officer Baxton's previous violent behavior; (3) failing to pursue a guilty plea offer that the defendant allegedly accepted; (4) failing to investigate multiple witnesses who provided signed affidavits alleging they had witnessed the shooting and that Officer Baxton had threatened to kill the defendant; (5) failing to litigate a motion to suppress statements after police allegedly coerced a statement from the defendant by striking him with a flashlight on his ribs, chest, shoulder, and head; (6) failing to request a severance of the gun charge from the attempt murder charge; (7) failing to offer any evidence in mitigation at sentencing; and (8) failing to communicate adequately with the defendant and consult with him regarding major decisions.

¶ 31    On June 14, 2018, the postconviction judge found that the defendant had established a gist of a constitutional violation and ordered that the defendant be appointed an attorney for second-stage proceedings. On October 6, 2022, postconviction counsel filed an amended petition for postconviction relief, which contained two claims for ineffective assistance of trial counsel. The first claim, that trial counsel failed to impeach Officer Baxton with evidence available at the time of trial (impeachment claim), contained two subclaims: that trial counsel failed to impeach Officer Baxton with evidence of his untruthfulness and prior inconsistent statement and that trial counsel failed to investigate four witnesses who would offer testimony supporting the defendant's version of events. The second claim alleged that trial counsel failed to present mitigating evidence at the sentencing hearing (sentencing claim).

¶ 32    The State filed a motion to dismiss the amended postconviction petition, arguing that both claims were barred by forfeiture as they were not raised during the direct appeal. The State argued in the alternative that the defendant failed to prove prejudice for the impeachment claim because the defendant's defense contained inconsistencies that "alone would be sufficient for the jury to

11

find the petitioner's version of events as uncredible." The State also maintained that the proffered witness affidavits would not be sufficient to justify the use of force by the defendant so as to justify his claim of self-defense. The State argued that the sentencing claim failed to prove prejudice as the defendant's presentencing investigation report contained the mitigating information for the sentencing court's review.

¶ 33 On August 10, 2023, the trial court granted the State's motion to dismiss, finding that, to the extent the ineffective assistance of trial counsel claims could be raised, they failed to meet the *Strickland*[1] standard. The defendant appeals.

¶ 34                                                    II. ANALYSIS

¶ 35 On appeal, the defendant argues that the trial court erred in granting the State's motion to dismiss the impeachment claim as the defendant's arguments, when taken to be true, show that trial counsel's performance was objectively unreasonable and, but for counsel's errors, the result of the proceedings would have been different. The defendant also argues that postconviction counsel was ineffective for failing to make necessary amendments to the defendant's *pro se* petition, including failing to properly shape the sentencing claim to avoid forfeiture, failing to attach an affidavit from the defendant supporting his claims, and failing to include three viable claims from the defendant's *pro se* petition.

¶ 36 The State initially argues that the trial court properly dismissed both of the defendant's postconviction claims based on *Strickland* grounds because trial counsel's decisions were reasonable trial strategy and, even if they were not, the defendant fails to prove prejudice. The State also argues that the defendant's postconviction counsel provided reasonable assistance as the

---

[1]The *Strickland* test is a two-pronged test for determining ineffective assistance of counsel claims. We will discuss this case in more detail later in the decision. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

second postconviction claim was not dismissed on grounds of forfeiture but on *Strickland* grounds, that there was adequate supporting documents attached to the amended postconviction petition, and that it was reasonable for postconviction counsel to decline to pursue meritless claims that were barred or contradicted by the record. As such, the State argues that the defendant's postconviction claims did not establish a substantial showing of a constitutional violation.

¶ 37    The Act allows a criminal defendant to raise a claim that his conviction resulted from a substantial violation of his constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2020). The Act establishes a three-stage process for the adjudication of postconviction petitions. *People v. Hommerson*, 2014 IL 115638, ¶ 7. If a petition is not summarily dismissed at the first stage, it advances to the second stage, where an indigent petitioner can obtain appointed counsel, and the State can move to dismiss the petition or answer. 725 ILCS 5/122-2.1(b), 122-4, 122-5 (West 2020). The standard of review for a motion to dismiss at the second stage of proceedings is *de novo*, and we accept as true all factual allegations that are not positively rebutted by the record. *People v. Johnson*, 2017 IL 120310, ¶ 14.

¶ 38    However, the claims before us have mutually exclusive remedies. The defendant first alleges that the postconviction court erred in granting the State's motion to dismiss his amended petition at the second stage. Should we find for the defendant, the remedy is to reverse the trial court's order and remand for a third-stage evidentiary hearing. *People v. Allen*, 2015 IL 113135, ¶ 22. In contrast, finding for the defendant on the allegation that he received ineffective assistance of postconviction counsel is remedied by remanding for a new second-stage hearing and assigning the defendant a new postconviction counsel. *People v. Schlosser*, 2017 IL App (1st) 150355, ¶¶ 36, 40, 46. We will first address whether postconviction counsel provided ineffective assistance.

13

¶ 39                    A. Ineffective Assistance of Postconviction Counsel

¶ 40    As the right to postconviction counsel at the second stage of proceedings is wholly

statutory, a postconviction petitioner is entitled to only a reasonable level of assistance. *People v.*

*Perkins*, 229 Ill. 2d 34, 42 (2007). Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) imposes

certain duties on postconviction counsel to ensure reasonable assistance. *People v. Turner*, 187 Ill.

2d 406, 410 (1999). Under Rule 651(c), postconviction counsel is required to: (1) consult with

petitioner to ascertain his allegations of how he was deprived of his constitutional rights,

(2) examine the record of proceedings from the trial, and (3) amend petitioner's *pro se* petition as

necessary to adequately present his contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Counsel

may file a certificate to show compliance with the requirements of the rule, or the record may

demonstrate that counsel complied with those requirements. *People v. Richmond*, 188 Ill. 2d 376,

380 (1999).

¶ 41    Where a Rule 651(c) certificate is filed, the presumption is that postconviction counsel

rendered reasonable assistance during second-stage proceedings under the Act. *People v. Jones*,

2011 IL App (1st) 092529, ¶ 23. Petitioner has the burden of overcoming the presumption by

demonstrating counsel's failure to substantially comply with the duties mandated by Rule 651(c).

*Id.*

¶ 42    Postconviction counsel is not required to amend a postconviction petition in every case;

amendments are necessary only when required to adequately present petitioner's claims. *Turner*,

187 Ill. 2d at 412. Counsel is under no obligation to amend a petition to advance meritless claims.

*People v. Greer*, 212 Ill. 2d 192, 205 (2004). Counsel is also not required to explain why they

believe a claim to be meritless unless they are withdrawing from the matter. *People v. Kuehner*,

2015 IL 117695, ¶ 21. Illinois courts have repeatedly held that the purpose of Rule 651(c) is to

14

ensure counsel shapes the petitioner's claims into proper legal form and presents these claims to the court. *Perkins*, 229 Ill. 2d at 43-44.

¶ 43    Here, counsel filed a Rule 651(c) certificate stating that he consulted with the defendant by mail and in person to ascertain the defendant's contentions of constitutional deprivations, examined the record of the proceedings, and made any amendment to the petition necessary for the adequate presentation of the defendant's *pro se* claims. Thus, we presume counsel provided reasonable assistance unless the defendant proves otherwise. We review counsel's compliance with Rule 651(c) *de novo*. *People v. Wallace*, 2018 IL App (5th) 140385, ¶ 31.

¶ 44    In the defendant's appeal, he argues that postconviction counsel failed the third requirement to amend his *pro se* petition to adequately present his claims as counsel failed to construct the sentencing claim so as to avoid forfeiture, failed to attach a signed affidavit from the defendant supporting his claims, and failed to include three viable claims from the *pro se* petition. The State argues that defendant failed to rebut the presumption of reasonable assistance where postconviction counsel submitted a valid Rule 651(c) certificate, amended the sentencing claim well enough for it to be considered by the postconviction court, attached sufficient documentary evidence to the petition, and dropped the three disputed claims for being either meritless or procedurally barred.

¶ 45    First, addressing the issue of forfeiture regarding the sentencing claim, the trial court's order of August 10, 2023, dismissed the sentencing claim on grounds other than forfeiture. The defendant has no basis on which to claim postconviction counsel failed to avoid forfeiture on this claim.

¶ 46    Next, the defendant argues that postconviction counsel provided unreasonable assistance by failing to attach to the amended petition an affidavit from the defendant alleging his claims

15

could be independently corroborated. The defendant argues that part of postconviction counsel's duty to amend the petition requires that they attach "affidavits, records, or other evidence supporting its allegations" and failure to do so is unreasonable assistance. *Turner*, 187 Ill. 2d at 414; *People v. Collins*, 202 Ill. 2d 59, 66-67 (2002); *People v. Ross*, 2015 IL App (3d) 130077, ¶¶ 17-19. The State argues that counsel did not need to include the defendant's affidavit as counsel attached ample documentary support for the defendant's claims.

¶ 47    We agree with the State that the matter before us is easily distinguishable from the above cases in that the petition is not otherwise lacking in supporting documentation. The cases are clear that failure to include "even the defendant's affidavit" in support of the petition's allegations without an explanation for its absence is considered unreasonable assistance. *Turner*, 187 Ill. 2d at 414. In *Turner* and *Collins*, no affidavits, whether from the defendants or from witnesses, were attached to the amended petition. *Id.*; *Collins*, 202 Ill. 2d at 67-68. In *Ross*, the only document attached to the petition was not notarized and thus could not be considered an affidavit. *Ross*, 2015 IL App (3d) 130077, ¶ 16. In all three cases, it was not the lack of the defendants' affidavit in particular, but the lack of any supporting evidence at all that proved fatal to the defendants' postconviction petitions. That cannot be said in the instant case. In support of the defendant's allegations, postconviction counsel attached Officer Baxton's military records, notarized affidavits from four alleged witnesses, and transcript excerpts from the trial and the civil deposition. Postconviction counsel also made several references to information contained in the trial record in support of counsel's arguments. We find that the documents postconviction counsel provided are more than sufficient to support the claims in the defendant's amended postconviction petition and an affidavit from the defendant was not necessary.

16

¶ 48　　The defendant then argues that postconviction counsel failed to properly amend his petition by not including three viable claims from his *pro se* petition. The defendant argues that omitting a viable claim or eliminating necessary allegations from the *pro se* petition is unreasonable performance. *People v. Addison*, 2023 IL 127119, ¶ 24. The defendant alleges postconviction counsel "inexplicably" removed claims that trial counsel (1) failed to pursue a guilty plea from the State that the defendant had wanted to take, (2) failed to move for the inclusion of *Lynch*[2] evidence, and (3) failed to litigate a motion to suppress the defendant's physically coerced statements to the police to the detriment of his petition. The defendant argues that the "plea of guilty" hearings on the record sheet are proof that he intended to take the guilty plea and would have but for trial counsel's actions. He also argues that allegations from an unrelated civil case against Officer Baxton, that was ongoing at the time of the defendant's trial, and Officer Baxton's military records would have been admitted as evidence of Officer Baxton's propensity for violence in support of his self-defense claim. The defendant argues that had the motion to suppress his statements to the police been litigated, the statements would have been suppressed, and the jury would have believed his version of events.

¶ 49　　The State argues that the record supports the presumption of reasonable assistance regarding the removal of the claims. Postconviction counsel stated at the second-stage hearing that the case was delayed due to his and the defendant's collaborative efforts to present the best case possible. Postconviction counsel's billing statement references continual communication with the defendant and includes the sending of a letter to the defendant, explaining the reasoning behind removal of one of the claims along with a copy of the amended petition for review. Such letter has

_____

[2]In *People v. Lynch*, 104 Ill. 2d 194 (1984), the Illinois Supreme Court held that convictions for violent crimes can be used as evidence of a violent character for purposes of supporting defendant's self-defense claim.

17

not been submitted with the common law record. The State argues that the transcripts of the "Plea of Guilty" hearings and the defendant's pursuit of a civil case against Officer Baxton indicate that the defendant had no intention of taking a guilty plea. The State also argues that the trial court would not have granted a motion to suppress as the video evidence clearly shows that the defendant was uninjured, and the police did not physically coerce his statements.

¶ 50 We agree with the State that the defendant has not overcome the presumption of reasonableness. As counsel did not withdraw, counsel was not required to explain why he removed claims from the amended petition. A review of the record further contradicts the defendant's alleged proof that the claims could not possibly be considered meritless. While the trial court's record sheet lists multiple "Plea of Guilty" hearings, the related transcript and court orders for those hearings clearly show that the judge, the State, the defendant's counsel, and the defendant himself treated them as status hearings. Discussions during the hearings addressed matters such as the defendant's fitness to stand trial, tolling the deadline for a speedy trial, discovery issues, and testing evidence. No mention was made by the judge, the State, the defendant's counsel, or the defendant of ongoing plea negotiations. Further, during the June 25, 2012, hearing, defendant indicated to the court that he wanted to proceed to trial. Therefore, we find that postconviction counsel was not unreasonable for failing to include a claim that trial counsel was ineffective for failing to pursue a guilty plea where the record demonstrated that the defendant wanted to proceed to trial.

¶ 51 Also, we find that the *Lynch* claim relating to the civil case is barred by *res judicata*. As stated above, this court has previously affirmed the trial court's orders on the defendant's *pro se* posttrial filings, including his allegation that the trial court was in error for not allowing evidence of Officer Baxton's alleged prior bad acts. *Gillum*, 2017 IL App (5th) 140450-U. By affirming,

18

this court ultimately upheld the trial court's ruling that allegations in a separate ongoing civil case do not qualify as admissible evidence of violent behavior. *Id.* As to the military records, having reviewed them, they do not contain any allegations of violent behavior. Thus, the records are impermissible to be used as evidence for *Lynch* purposes. Postconviction counsel's decision to not include these claims was not unreasonable.

¶ 52    Finally, the defendant alleges that postconviction counsel was unreasonable for not including his claim that trial counsel was ineffective for failing to litigate a motion to suppress statements the defendant made to the police. The State argues that, as the record does not indicate that the statements at issue were involuntary, trial counsel made a deliberate strategic decision to withdraw the motion, and, therefore, the defendant's claim was meritless.

¶ 53    Failure to include a claim that trial counsel failed to file a motion to suppress a coerced statement may be considered unreasonable assistance of postconviction counsel. *People v. Barmore*, 2022 IL App (2d) 200449-U. While the decision to file a motion to suppress generally falls under trial strategy, the failure to file a motion to suppress a statement can be considered ineffective assistance of trial counsel if there is some indication that the statements were truly involuntary. *People v. Brickhouse*, 2021 IL App (3d) 150807, ¶ 40. In *Barmore*, trial counsel had affidavits from the defendant and his mother alleging specific abuse from the police in obtaining the defendant's statement but failed to file a drafted motion to suppress. *Barmore*, 2022 IL App (2d) 200449-U, ¶ 34. Postconviction counsel was then found unreasonable for not attaching the affidavits or the drafted motion to suppress in support of the ineffective assistance of trial claim. *Id.* ¶ 36. Unlike in *Barmore*, the defendant's trial counsel in this case did not fail to file nor did counsel fail to pursue the motion. Rather, the record shows, and the defendant admits, that trial counsel made a deliberate decision to withdraw the filed motion. The video of the confession,

which is part of the record on appeal, supports trial counsel's decision to withdraw the motion as there are no indications that the defendant was physically injured immediately prior to his confession. As such, the record contradicts the defendant's allegations that his statements to the police were involuntary. Therefore, trial counsel's decision to withdraw the motion to suppress falls under trial strategy, and postconviction counsel was not unreasonable for not including the claim in the amended postconviction petition.

¶ 54   Based on the above, we find that the defendant has failed to rebut the presumption of reasonable assistance of postconviction counsel. Thus, we deny his request to reverse the trial court's order and grant a new second-stage hearing.

¶ 55         B. Dismissal of Amended Petition at the Second Stage

¶ 56   The defendant argues that his amended petition made a substantial showing that his trial counsel was ineffective for failing to investigate and present testimony from four supporting eyewitnesses who would have testified consistently with the defendant's version of events and for failing to impeach Officer Baxton's testimony by attacking his credibility with prior inconsistent statements and his military disciplinary records. The State argues that the witnesses lacked credibility because they were jailhouse witnesses and, given the presence of the video evidence, trial counsel was not unreasonable for deciding against presenting their testimony. The State further argues that the impeachment evidence was inadmissible, barred, and/or would not have altered the outcome of the trial.

¶ 57   As stated above, this appeal arises at the second stage of the postconviction petition. Since the second stage of postconviction proceedings involves a purely legal determination, the trial court is precluded from engaging in any fact-finding or credibility determinations. *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998). Therefore, we take all allegations in the petition not

20

rebutted by the record as true and review the petition *de novo*. *Id.* at 388; *People v. Sanders*, 2016 IL 118123, ¶ 31. To proceed to a third-stage postconviction hearing, the amended petition must make a substantial showing of a constitutional violation. *Coleman*, 183 Ill. 2d at 381. A defendant can establish a constitutional violation by showing that the defendant's trial attorney provided ineffective assistance of counsel. *Strickland*, 466 U.S. at 687.

¶ 58 To establish that counsel was ineffective under the *Strickland* test, a defendant must show that (1) his attorney's performance was objectively unreasonable and (2) the defendant suffered prejudice as a result. *Id.*; *People v. Manning*, 227 Ill. 2d 403, 412 (2008). Counsel's performance is measured by an objective standard of competence under prevailing professional norms. *People v. Evans*, 186 Ill. 2d 83, 93 (1999). The effectiveness of counsel must be assessed against an "objective standard of reasonableness from the perspective of the time of the alleged error and without hindsight." *People v. Reed*, 2014 IL App (1st) 122610, ¶ 66. However, "strategic choices that are made after investigation of the law and the facts are virtually unassailable." *People v. Ramsey*, 239 Ill. 2d 342, 433 (2010). As for the prejudice prong of the *Strickland* test, a defendant must show that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *People v. Houston*, 226 Ill. 2d 135, 144 (2007).

¶ 59                              1. *Failure to Investigate Witnesses*

¶ 60 While strategic choices made after a thorough investigation are virtually unchallengeable, a lawyer cannot make a strategic decision about evidence of which he is unaware. See *Strickland*, 466 U.S. at 690-91. Therefore, should a lawyer fail to investigate known witnesses who may be able to support otherwise uncorroborated defense testimony, any decision made regarding the witnesses' testimony cannot be said to be strategic. *Id.* This court has previously held that a failure

to present witnesses who can support otherwise uncorroborated testimony can be considered unreasonable. *People v. King*, 316 Ill. App. 3d 901, 913 (2000).

¶ 61     Here, defendant alleges that trial counsel failed to speak with four identified witnesses prior to trial. The witnesses signed affidavits regarding their testimony on February 8, 2013; February 10, 2013; and December 5, 2013, well before the trial date of March 24, 2014. The defendant alleges that his trial counsel never contacted the witnesses, and there is nothing in the record that contradicts his allegations. As trial counsel never met with the witnesses, he was unaware of the contents of their testimony and incapable of determining their credibility. As such, his decision not to present any defense witnesses cannot be considered to be a strategic choice. Therefore, the defendant has shown that trial counsel's representation was objectively unreasonable and has met the first prong of the *Strickland* test.

¶ 62     As for the second prong, taking the allegations in the amended petition as true, but for trial counsel's decision, four witnesses would have offered testimony of the shooting that would have supported the defendant's self-defense claim. Without weighing in on the persuasiveness of the witnesses' testimony, as that is the role of the postconviction court at the third-stage evidentiary hearing, it is possible that a jury may have found the witnesses' testimony compelling. As such, the defendant has made a substantial showing that trial counsel's failure to investigate the four potential witnesses created prejudice against him. As the defendant has made a substantial showing that his allegations satisfy both prongs of the *Strickland* test, we find that the trial court's decision to dismiss this claim at the second stage was in error, and we remand for a third-stage evidentiary hearing.

¶ 63                                    2. *Failure to Impeach*

¶ 64    The defendant argues that his trial counsel was ineffective for not attempting to impeach Officer Baxton with Officer Baxton's deposition testimony from the defendant's civil case against him. The defendant further argues that trial counsel failed to attack Officer Baxton's credibility with his military disciplinary records that were available to counsel at the time of trial. The State argues that the deposition testimony did not contain any substantial discrepancies from Officer Baxton's trial testimony and that the military disciplinary records were ineligible to be used for *Lynch* purposes.

¶ 65    "[T]he complete failure to impeach the sole eyewitness when significant impeachment is available is not trial strategy ***." *People v. Salgado*, 263 Ill. App. 3d 238, 246-47 (1994). In *Salgado*, the witness in question had testified prior that he had not seen the defendant shoot the victim, but under oath testified that he had witnessed the defendant commit the act. *Id.* Likewise, in *People v. Garza*, 180 Ill. App. 3d 263, 269-70 (1989), the witness had previously testified that the shooter had notable scars and a tattoo, which did not match the defendant's description. It is unquestionable that conflicting testimony regarding the identity of the alleged attacker is significant.

¶ 66    Here, the difference in testimony is negligible. The defendant alleges that in the civil deposition, Officer Baxton testified that he first drew his service weapon after struggling with the defendant and then holstered it to draw his pepper spray. However, during the trial, Officer Baxton testified to drawing and holstering his service weapon prior to, and again after, the scuffle with the defendant. We note that this is the only inconsistency alleged by the defendant. As the State argues, the minor inconsistency only strengthens the remaining consistent testimony. Thus, trial counsel's

23

decision not to impeach Officer Baxton with a prior inconsistent statement falls under trial strategy and does not pass the first prong of the *Strickland* test.

¶ 67    As to Officer Baxton's military disciplinary records, the defendant alleges that the use of the records would have shown a pattern of misconduct and a history of untruthfulness. This appears to be an allegation of failure to impeach using reputation evidence. For reputation evidence to be used for impeachment purposes, counsel must establish the general reputation of the witness's truthfulness in his neighborhood, his work, or his social circle at the time of trial. *People v. Kliner*, 185 Ill. 2d 81, 173 (1998).

¶ 68    The disciplinary action against Officer Baxton occurred in 2005. The defendant's trial occurred in March of 2014. It is not unreasonable, then, that trial counsel would discount a disciplinary action from nine years before the trial as proof of Officer Baxton's current reputation for honesty or lack thereof.

¶ 69    Based on the above, we find that the defendant has failed to make a substantial showing that trial counsel was unreasonable when deciding not to impeach the State's witness based on minor inconsistencies in testimony and irrelevant military records. However, since we find that the defendant has made a substantial showing that trial counsel was ineffective for failing to investigate four defense witnesses, we remand the matter for a third-stage evidentiary hearing.

¶ 70                                    III. CONCLUSION

¶ 71    For the foregoing reasons, we reverse the trial court's judgment finding that the defendant failed to make a substantial showing as to his claim that trial counsel provided ineffective assistance by failing to investigate four defense witnesses, and we remand the matter for a third-stage evidentiary hearing on that claim. We otherwise affirm the court's judgment on the remaining postconviction claims.

24

¶ 72    Affirmed in part and reversed in part.

¶ 73    Cause remanded.